NATIONWIDE MUTUAL FIRE INSURANCE CO., APPELLEE, *v.* TURNER ET AL., APPELLANTS.

(No. 50278 — Decided April 15, 1986.)

*Timothy Johnson,* for appellee.

*John J. McCarthy, Joel Levin* and *Jeffrey A. Leikin,* for appellants.

*James J. McNamara,* for estate of Carol V. Higgins.

JACKSON, J. This appeal arises from the grant of summary judgment in favor of plaintiff-appellee.

Appellant Charlotte Turner is the named insured in a homeowner's policy with appellee Nationwide. At issue is the scope of coverage provided under the policy.

Appellant Charlotte Turner brought an action against the estate of her deceased son-in-law, Carol Higgins, for wrongfully causing the death of her husband, Roland Turner. Appellee Nationwide sought a declaratory judgment that it was not obligated to defend Carol Higgins' estate because he was not an "insured" under the terms of the policy with Charlotte Turner; and even if he were, his actions were excluded because his actions were intentional and because they did not arise out of the maintenance, ownership or use of the home, as required by policy terms.

In September 1980, after several months' absence, Higgins returned to Cleveland because of his wife's pregnancy. He moved in with her and her two adopted children from a prior marriage at the home of her mother, Charlotte Turner.

The Higginses lived upstairs in three bedrooms. The Turners lived downstairs in a converted living-room bedroom.

In late March 1981, Higgins evidently received an ultimatum from Mrs. Turner in a letter that he either get a job by the end of the week or move out.

On March 25, 1981, Higgins called his wife, mother-in-law, and father-in-law and the two children into the room to talk with them. He announced in reference to the ultimatum that there were no jobs. He pulled a pistol out of his briefcase and shot and seriously wounded Mrs. Turner and his wife and fatally shot Roland Turner. Higgins subsequently shot and fatally wounded himself after he crashed his car. He died one week later.

## I

In her first assigned error,[1] appellant claims the trial court erred in granting summary judgment for plaintiff Nationwide.

Her argument rests upon two premises: that the court erred, (1) in determining as a matter of law that a son-in-law residing with the named insured was not a member of the family so as to qualify for coverage as an insured; and (2) in determining as a matter of fact that Higgins' acts were intentional, and thereby excluded from coverage.

## II

The homeowner's policy issued to Charlotte Turner contained the following coverage:

"Section II of this Homeowners Policy insures those named in the declarations against loss from damages for negligent personal acts or damage for negligence arising out of the ownership, maintenance or use of real or personal property, subject to the provisions and conditions stated herein and subject to the limit of liability stated in the Declarations for liability."

By its terms the policy covers "the named insured and members of his family, * * * residing in the same household."[2]

The trial court determined that Higgins, a son-in-law of the named insured, was not a member of the family. The court relied upon the definition of "family" in a will contest action, *Albright* v. *Albright* (1927), 116 Ohio St. 668, 682, which limited "family" to mean "those descended from a common progenitor." Under this restrictive definition, it is conceivable that even the spouse of the named insured, Roland Turner, would be excluded from coverage, because he did not descend from a common progenitor.

The meaning of the word "family" necessarily depends on the field of law in which the word is used, the purpose to be accomplished by its use, and the facts and circumstances of the case. See *Le Roux* v. *Edmundson* (Minn. 1967), 148 N.W.2d 812, 814.[3]

---

[1] Appellant frames the errors as follows:

"I. The trial court committed reversible error by granting a summary judgment to the insurance company since there were genuine issues of material fact whereby reasonable minds could come to different conclusions.

"II. The trial court erred in failing to allow coverage under the Turners' homeowner's insurance policy for the acts of Mr. Higgins.

"III. The trial court committed reversible error by its refusal to classify Mr. Higgins as an insured under the Turners' homeowner's insurance policy.

"IV. The trial court erred by failing to hold that the acts of Mr. Higgins did arise out of the ownership, maintenance [or] use of the named insureds' real property."

[2] The complete family liability clause states:

"1. *THIS INSURANCE COVERS THE NAMED INSURED AND MEMBERS OF HIS FAMILY,* including any other person under the age of twenty-one in the care of any of the foregoing, *residing in the same household.* This coverage is also extended to any person or organization legally responsible for animals and watercraft owned by the insured." (Emphasis added.) Section II, Part I.

[3] Stepchildren of an insured living in the same household were members of the "family" within the terms of an automobile liability policy excluding coverage to the insured or any member of the family of the insured living in the same household. See *Le Roux, supra.*

"Family" has been variously defined as referring to parents and their children; a collective body of persons who live under one roof and under one head or management; as connoting some relationship, blood or otherwise; as a household. See Black's Law Dictionary (5 Ed. 1979) 543-544.

Appellee urges this court to limit the definition of "family" in the instant case to blood relatives. We decline to do so.

The Ohio Supreme Court has held that language in an insurance contract is to be understood in its ordinary, usual, or popular sense. *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215 [28 O.O. 138]. However, just what is meant by "family" is difficult to determine. 4 Couch on Insurance 2d (1984), Section 27:45. Doubtful or ambiguous language in an insurance contract should be construed against the insurer and in favor of the insured. *Great American Mut. Indemn. Co.* v. *Jones* (1924), 111 Ohio St. 84; *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593 [23 O.O. 3d 495].

Had the insurance company desired to exclude from coverage members of the family by marriage, though they are members of the household, it could properly have done so.

Therefore, this court is persuaded that the trial court erred in determining that Higgins was not an insured under the terms of the policy.

Having concluded that Higgins was an insured, this court must now determine whether the lower court erred in determining as a matter of fact that the shootings were intentional and thus excluded from the coverage of the insurance policy.

The policy specifically excludes from coverage "bodily injury, illness or death * * * caused intentionally by * * * an insured." (Section II, Part II.)

The word "intent" within the context of a specific exclusion in a liability policy against an intended bodily injury means that the actor desires to cause the consequences of his act or that he believes that the consequences are substantially certain to result from it. 7A Appleman, Insurance Law & Practice (Berdal Rev. 1979), Section 4501.09.

Such a provision is designed to prevent a person from being indemnified for his own wrongful acts. 7A Appleman, *supra.*

The pleadings before the court in the case at bar raise a question of fact as to whether Higgins was capable of having the requisite intent to inflict injury.

Mrs. Higgins testified on deposition that her husband did not appear to recognize her when he shot her.

She testified,

"* * * when I grabbed him by the shoulders, and I was going, 'Higgins, Higgins, what is wrong,' and he was catatonic. He didn't blink. He didn't speak. He didn't — he had no expression or speech. * * *"

Moreover, there was deposition testimony that Higgins had attempted suicide the previous week, but was stopped by police. He had become withdrawn and depressed since his return to the United States, and "just slept all the time."

Appellants offered in deposition testimony that Higgins had a prior history of wife abuse, that his behavior was unpredictable, and that he felt "everyone was against him."

Though we decline to attach any psychological labels to Higgins' activities and behavior, the evidence submitted by appellants indicates that he had serious mental problems. Mrs. Higgins had attempted to obtain psychiatric counseling for him, but he refused to talk to the counselor.

On the basis of this evidence we are persuaded that there was a question of material fact raised regarding Higgins' sanity at the time of the shootings.

Summary judgment is not a vehicle to resolve issues reserved for the trier of fact. *Duke* v. *Sanymetal Products Co.*

(1972), 31 Ohio App. 2d 78 [60 O.O. 2d 171].

A summary judgment is appropriate when it is demonstrated that there is no genuine issue as to any material fact; that the moving party is entitled to judgment as a matter of law; and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non- moving party, *who is entitled to have the evidence construed most strongly in his favor.* Civ. R. 56(C); *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64 [8 O.O. 3d 73].

Construing the evidence most strongly in favor of appellants, reasonable minds could come to more than one conclusion as to Higgins' mental state at the time of the shooting. A question of fact was presented concerning whether Higgins was mentally ill and therefore could not form the intent to harm. The court erred in granting summary judgment when there were genuine issues of material fact.

Appellee contends that summary judgment was appropriate as a matter of law, because one is presumed to intend the natural and probable causes of his intentional act. This axiom of law is inapplicable to the circumstances of this case. The Ohio Supreme Court has recently defined an "intentional" tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90. At issue is whether Higgins had the requisite intent to inflict injury, *not whether he intended to shoot Turner.*

Other jurisdictions which have had the opportunity to consider the effect of insanity on intentional acts in the context of an exclusion in a liability policy have concluded that insanity precludes the exclusion from being activated.

In *Arkwright-Boston Mfrs. Mut. Ins. Co.* v. *Dunkel* (Fla. App. 1978), 363 So. 2d 190, the plaintiff recovered against the insurer under a homeowner's liability policy wherein an insured had injured plaintiff and killed her mother. The court upheld a jury finding that the insured had been insane at the time of the shootings, and thus had not acted "intentionally" within the meaning of the exclusion, even though the insured had sufficient mental capacity to realize he was pointing a gun and discharging a bullet and firing at his victim.

Similarly, although a decedent may have had the intent to shoot his wife at the time he shot and killed her, his act was found not to be intentional within the meaning of the exclusion when the decedent was insane at the time of the shooting. *Von Dameck* v. *St. Paul Fire & Marine Ins. Co.* (La. App. 1978), 361 So. 2d 283.

Moreover, an act of an individual cannot be treated as "intentional" if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason. *Globe American Cas. Co.* v. *Lyons* (App. 1981), 131 Ariz. 337, 641 P.2d 251.

This court does recognize that at least one jurisdiction has reached a contrary result, holding that an insane individual can nevertheless "intentionally" act even though the consequences of the act are incomprehensible to that individual. See *Colonial Life & Acc. Ins. Co.* v. *Wagner* (Ky. Ct. App. 1964), 380 S.W.2d 224. However, we believe the better view is that an insane individual cannot commit an intentional act within the meaning of an intentional injury exclusion clause. This view is supported by the leading authorities on the subject. See 7A Appleman, Insurance Law & Practice, *supra;* and 4 Couch on Insurance 2d (1984), Section 27:156; and 10 Couch on Insurance 2d (1982), Section 41:696.

Thus, we conclude that the trial court erred in granting summary judgment for appellee as a matter of law,

because an insane person cannot commit an intentional act within the meaning of an intentional injury exclusion clause. Whether the insured was in fact insane is a question of fact for the trier of fact, and is not properly determined on a motion for summary judgment.

## III

The final issue to be resolved is whether the damages sustained by appellants arose out of the "ownership, maintenance or use of the real * * * property."

"Arising out of" means generally "flowing from" or "having its origin in." *Ins. Co. of North America* v. *Royal Indemn. Co.* (C.A.6, 1970), 429 F.2d 1014. The phrase generally indicates a causal connection with the insured property, not that the insured premises be the proximate cause of the injury.

Appellee's citation of various automobile insurance cases in which the injury "arising out of" the possession of the automobile is found to be merely fortuitous are not persuasive.

In *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41 [21 O.O.3d 26], the Supreme Court determined that the scope of uninsured motorists coverage was broad enough to permit recovery when an insured's injuries resulted from an uninsured motorist's intentional tort. However, the court found that the intentional act was an intervening cause unrelated to the use of the vehicle. The insured was shot by the uninsured motorist, while standing outside his vehicle following an accident. The court concluded that the insured was not "occupying" his auto at the time as required as a condition of coverage.

*Kish* stands for the proposition that in order to come within the purview of an automobile liability policy, the type of conduct must be foreseeably identifiable with the normal use of the vehicle and the vehicle must be more than the coincidental place in which the injury occurred.

Despite appellee's argument to the contrary, *Kish* is not analogous to the instant case. The shootings in the case at bar arose out of a dispute over the use of the property and occurred on the insured premises. There is no intervening event unrelated to the use of the property to break the causal chain.

The trial court committed reversible error in determining that coverage was excluded because the acts complained of did not arise out of the use of the property.

Appellants' assigned errors have merit and are sustained.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment accordingly.*

PARRINO, C.J., concurs.

PRYATEL, J., concurs in judgment only.