WEST AMERICAN INSURANCE COM-
PANY OF THE OHIO CASUALTY
GROUP OF INSURANCE COMPA-
NIES, Plaintiff–Appellant,

v.

Mary McGHEE, as Co–Personal Repre-
sentative and R.W. Chamblee, Jr., as
Successor Co–Personal Representative
of the Estate of Philmore Hankerson,
Sr., Deceased; Mary Vida and Nancy
Collins, as Co–Administrators of the
Estate of Kathy Kalber, Andre Kalber
Butler, and Nicolle Kalber, Defendants–
Appellees.

No. 71A03–8801–CV–11.

Court of Appeals of Indiana,
Third District.

Nov. 7, 1988.

Rehearing Denied Jan. 6, 1989.

John W. Van Laere, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for plaintiff-appellant.

Charles A. Asher, South Bend, for defendants-appellees.

HOFFMAN, Judge.

The West American Insurance Company (West) is appealing a negative decision in this declaratory judgment action. West filed this action seeking a ruling that, by reason of an exclusionary clause, it was not liable to the appellees, who are a group of potential claimants under a homeowner's insurance policy issued by West. The

court reached its decision on an agreed record, without live testimony and, although West poses several issues, they can be simply restated as: whether the evidence is sufficient to support the trial court's judgment.

West's insured was Philmore Hankerson, a 68–year–old man who owned a home in the city of South Bend, Indiana. The record contains very few details about Hankerson's personal life, but at his home also lived a Kathy Kalber, age 36, and her three children, Laurie age 15; Andre age 8; and Nicolle age 3. On January 3, 1985 Kathy Kalber was also three months pregnant.

In the early morning hours of January 3, 1985, Hankerson killed Kathy in her sleep by hitting her repeatedly in the face with the blunt end of an axe. Hankerson also killed Laurie; however, he did this with a shotgun, which he fired at her head from pointblank range. Afterwards, as Andre later told police, Hankerson sat and looked out the living room window for awhile, and then Hankerson said he was going to call an ambulance. Instead, Hankerson went to the basement and committed suicide by tieing a shoestring around his toe, and using this to pull the trigger of a shotgun aimed at his head.

There is virtually no evidence about what motivated Hankerson to commit these acts. The police made an effort to interview Hankerson's and Kalber's friends and relatives; however, almost without exception, these people responded that they knew little or nothing about Hankerson's and Kalber's relationship or personal affairs. The only relevant evidence came from a relative who told police that Hankerson and Kalber frequently argued and that Hankerson was supposed to move out the day the killings occurred. This relative also said that Laurie Kalber frequently involved herself in her mother's arguments with Hankerson. Additionally the relative spoke with Kathy the evening before her death and at that time she and Hankerson were arguing. Kathy stated then that she was holding a stick and that she was going to hurt Hankerson if he came upstairs with his shotgun.

The case below was initiated when Kathy Kalber's estate filed a wrongful death action against Hankerson's estate. Hankerson's estate sought to have West defend the suit pursuant to the terms of a homeowner's insurance policy West had issued. West, in turn, filed this declaratory judgment action claiming it was not liable to Kathy Kalber's estate because of an exclusionary clause in its policy. This clause reads:

"1. COVERAGE E—Personal Liability, Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured...."

After reviewing the evidence as submitted by the parties, the trial court issued its judgment. The court did not reveal its reasoning, but it held that the exclusionary clause did not apply to the claims of Kathy Kalber's estate, and that West was contractually obligated to defend the suit against Hankerson's estate.

It is well settled that an insurance company is free to limit its liability in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to construction and enforcement. *Allstate Ins. Co. v. Boles* (1985), Ind., 481 N.E.2d 1096. This is also true for clauses, like the one at issue here, that exclude liability for acts intentionally caused by the insured, since it is sound public policy to not permit insurance against harms that a person may intentionally cause. *See, Home Ins. Co. v. Neilsen et al.* (1975), 165 Ind.App. 445, 332 N.E.2d 240.

In *Home Ins. Co., id.,* this Court held that an intention to cause injury can be established either by showing an actual intent to injure or by "showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law." *Id.* at 244. In the present case, the parties have stipulated that Hankerson killed Kathy Kalber by hitting her repeatedly in the head with an axe, and that he killed Laurie Kalber with a shotgun blast to the face.

Logically, the nature and character of these acts are such that they could only have been committed with an intent to cause injury and thus Hankerson's intent to cause harm to Laurie and Kathy Kalber must be inferred as a matter of law. Consequently, on the available facts and under current case law, West has carried its burden of establishing the coverage exclusion.

The appellees acknowledge these facts, but their counter-argument is that Hankerson was insane at the time the killings occurred, and thus he lacked the mental capacity to intentionally cause the harm. The appellees recognize that Indiana has not adopted an insanity defense to the operation of an intentional injury exclusion clause; however, they argue and research reveals that a majority of other jurisdictions that have addressed the issue do accept the defense. *See* Annot., 33 A.L.R. 983 (1984). The cases applying an insanity defense in this context contain logical and compelling arguments. Applying an intentional injury exclusion clause to the acts of persons unable to control their behavior defeats the essential purpose for such clauses, which is, to prevent individuals from benefitting from intentionally caused harm and to deter such behavior. Logically someone lacking the requisite mental capacity would not be deterred by the existence or non-existence of insurance coverage. *See, Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 503 N.E.2d 212; *Globe American Casualty Co. v. Lyons* (1981), 131 Ariz. 337, 641 P.2d 251. Accordingly, the appellees in this case are correct in arguing that Indiana should now adopt insanity as a defense to the application of an intentional injury insurance exclusionary clause.

Adoption of the insanity defense does not resolve the present case. Although West bears the burden of proving its coverage exclusion, it is settled law that a person is presumed sane until proven otherwise, *Rush et al. v. McGee et al.* (1871), 36 Ind. 69. Thus the appellees had the burden of proving Hankerson's insanity by a preponderance of the evidence. *See e.g. Turner v. Estate of Turner* (1983),

Ind.App., 454 N.E.2d 1247, and based on the evidence in the record, the appellees have failed to carry their burden.

In reaching this decision this Court is mindful of the limits of appellate review and of an appellate court's duty to refrain from reweighing evidence; however, in this case the appellees introduced no evidence to overcome the presumption that Hankerson was sane and what evidence that exists is, at best, equivocal. The appellees argue that a double-murder-suicide is, of itself, evidence of irrationality. While Hankerson's actions were, by any standard, irrational, the commission of an irrational act does not necessarily equate with legal insanity.

Proof of legal insanity, in this context, requires some evidence tending to prove that the actor was unable to conform his behavior to societal norms. *See e.g., Globe Amer. Cas., supra.* Here, the evidence of Hankerson's actions and his relationship with Kathy and Laurie does not indicate, in any way, that Hankerson was incapable of controlling his behavior. The record is only conclusive as to the bare facts, and any conclusions about Hankerson's motives or mental state can only be the product of speculation.

In defense of their judgment, the appellees cite a number of cases from other jurisdictions where a murder-suicide scenario was found to create a genuine factual issue about the actor's sanity or where the court found that the actor was legally insane. *See Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 503 N.E.2d 212; *von Dameck v. St. Paul Fire & Marine Ins.* (1978), La.App., 361 So.2d 283; *Arkwright–Boston Mfrs., etc. v. Dunkel* (1978), Fla.App., 363 So.2d 190. These cases are superficially similar to the case at bar, but there is a critical distinction. In each of these cases the defendant had a history of mental illness, or there was expert testimony regarding the actor's sanity. In the present case there is no such evidence. Accordingly the evidence in this case is without conflict that West has proven the applicability of its policy exclusion and that the appellees have failed to overcome the presumption that Hankerson was sane, and it must be concluded that the

trial court erred when it entered judgment against the West American Insurance Company.

The appellees also argue that the present appeal should be dismissed because of West's allegedly inadequate motion to correct error, and because of an alleged failure to follow Appellate Rule 8.3(A)(7). West's motion to correct error was written with enough specificity and clarity so that the trial court was "made aware of the exact legal issue involved." *Johnson v. State* (1975), 167 Ind.App. 292, 295, 338 N.E.2d 680, 682. Also, while West's appellate brief is perhaps not a paradigm of organization, it does fulfill the requirements of Appellate Rule 8.3(A)(7).

The above resolution also necessarily obviates any need to discuss the appellees' demand for appellate attorney fees; therefore, this case is reversed.

REVERSED.

GARRARD, P.J., and MILLER, J., concur.