[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 624.]

NATIONWIDE INSURANCE COMPANY, APPELLANT, *v*. ESTATE OF KOLLSTEDT
ET AL., APPELLEES.

[Cite as *Nationwide Ins. Co. v. Estate of Kollstedt*, 1995-Ohio-245.]

*Insurance—Homeowner's policy—Exclusion in policy for expected or intended injuries does not apply, when—When disputed, determination whether insured lacked mental capacity to commit an intentional act is a matter to be determined by trial court and will not be disturbed, absent an abuse of discretion.*

1.  A provision in a liability insurance policy which excludes coverage to an insured where the insured expected or intended to cause bodily injury or property damage does not apply under circumstances where the insured was mentally incapable of committing an intentional act.

2.  When disputed, the determination whether an insured lacked the mental capacity to commit an intentional act is a matter to be determined, in the first instance, by a trial court and such determination is to be made by the trial court on the basis of the evidence. Such a determination will not be disturbed, absent an abuse of discretion.

(No. 93-942—Submitted January 24, 1995—Decided March 29, 1995.)

CERTIFIED by the Court of Appeals for Butler County, No. CA92-06-101.

————————————

{¶ 1} On October 18, 1989, Paul L. Kollstedt shot and killed Robert Hatmaker. Kollstedt was arrested and charged with murder, a violation of R.C. 2903.02. On October 20, 1989, Dr. Roger H. Fisher, a clinical psychologist, evaluated Kollstedt to determine whether he was competent to stand trial. Following the evaluation, Fisher reported that Kollstedt suffered from a severely disabling psychotic illness that would render Kollstedt incapable of participating in

his defense. Fisher diagnosed Kollstedt as suffering from "a primary degenerative dementia of the Alzheimer type, senile onset with delirium." However, Fisher concluded that "with proper care and medication Mr. Kollstedt could be restored within a year to a level of psychological functioning at least satisfactory enough to render him competent to stand trial for this offense." On October 24, 1989, the Hamilton Municipal Court determined that Kollstedt was incompetent to stand trial on the charge of murder. Therefore, the court ordered that Kollstedt be placed in the Dayton Mental Health Center, Forensic Unit, for restoration to competency. See R.C. 2945.38(D).

{¶ 2} On October 26, 1989, Kollstedt was admitted to the Dayton Mental Health Center. There, Kollstedt was treated by Dr. Salah M. Samy, a psychiatrist. On February 21, 1990, Kollstedt was transferred from the Dayton facility to the Pauline Warfield Lewis Center in Cincinnati. In May 1990, Dr. Marguerite Blythe, a psychiatrist, reported that no form of active treatment could restore Kollstedt to mental competency. Thereafter, it appears the murder charge against Kollstedt was dismissed upon a finding that there was no substantial probability Kollstedt would become competent to stand trial. Kollstedt died in 1990 without leaving any written or recorded testimonial evidence concerning the circumstances of the shooting.

{¶ 3} At the time of the shooting, Kollstedt had a policy of homeowner's insurance which had been issued by Nationwide Insurance Company, appellant. On March 13, 1991, appellant filed a declaratory judgment action in the Court of Common Pleas of Butler County naming, as defendants, Christine Abbott, Executor of the Estate of Robert Hatmaker ("Abbott"), and Richard J. Tharp, Administrator of the Estate of Paul L. Kollstedt ("Tharp"), appellees. In the complaint, appellant sought a determination that it was not obligated to defend or indemnify Tharp under the policy in a wrongful death action initiated by Abbott for the death of Hatmaker. Specifically, appellant claimed that no coverage was available under Kollstedt's

homeowner's policy on the basis of an exclusion that applied to bodily injury or property damage "expected or intended" by the insured.[1]

{¶ 4} In a decision filed April 7, 1992, the trial court held that appellant was obligated under the homeowner's policy to defend and indemnify Tharp for any causes of action resulting from the October 18, 1989 shooting. Specifically, the trial court, citing *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 29 OBR 83, 503 N.E.2d 212, determined that the exclusion in the policy for "expected or intended" injuries did not apply, since Kollstedt was "insane" at the time of the shooting and, thus, could not have committed an intentional act. The trial court also found that, in any event, the intentional injury exclusion could not be invoked to avoid coverage, since appellant had failed to demonstrate that the injury itself was expected or intended. See *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, syllabus.

{¶ 5} On appeal, the court of appeals affirmed the judgment of the trial court. The court of appeals held that the evidence supported the trial court's determination that the intentional injury exclusion did not apply, since Kollstedt lacked the mental capacity to commit an intentional act. In so holding, the court of

---

1. The policy provided, in part:

"SECTION II—LIABILITY COVERAGES

"COVERAGE E—PERSONAL LIABILITY

"We [appellant] will pay damages the *insured* is legally obligated to pay due to an *occurrence*."

"We will provide a defense at our expense by counsel of our choice. * * * Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability."

"COVERAGE F—MEDICAL PAYMENTS TO OTHERS

"We will pay the necessary medical and funeral expenses incurred within three years after an accident causing *bodily injury*. * * * This coverage applies to others as follows:

"* * *

"b. to a person off the *insured location*, if the *bodily injury*:

"* * *

"(2) is caused by the activities of an *insured*." (Emphasis in original.)

However, the exclusions in the policy provided, in part:

"1. *Coverage E—Personal Liability*, and *Coverage F—Medical Payments to Others* do not apply to *bodily injury* or *property damage*:

"a. which is expected or intended by the *insured*." (Emphasis in original.)

appeals adopted the reasoning of *Turner*, *supra*, that an act cannot be considered "intentional," within the meaning of an intentional injury exclusion clause, if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason. Finding its judgment to be in conflict with the judgment of the Ninth Appellate District in *W. Res. Mut. Cas. Co. v. Eberhart* (Aug. 7, 1991), Summit App. No. 14986, unreported, the court of appeals certified the record of the case to this court for review and final determination.

_____

*Droder & Miller Co., L.P.A.*, and *W. John Sellins*, for appellant.

*Millikin & Fitton Law Firm* and *Michael A. Fulton*, for appellee Tharp.

*Stephen C. Lane* and *David L. Kash*, for appellee Abbott.

_____

**DOUGLAS, J.**

{¶ 6} The issue that has been certified to this court by the Twelfth Appellate District is "whether, within the context of an intentional injury exclusion clause in an insurance contract, insanity should be defined pursuant to R.C. 2901.01(N) or *Turner*, *supra* [29 Ohio App.3d 73, 29 OBR 83, 503 N.E.2d 212]."

{¶ 7} R.C. 2901.01(N), effective July 24, 1990, provides that "a person is 'not guilty by reason of insanity' relative to a charge of an offense only if he proves * * * that at the time of the commission of the offense, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts."

{¶ 8} In *Turner*, *supra*, 29 Ohio App.3d 73, 76, 29 OBR 83, 87, 503 N.E.2d 212, 216, the Court of Appeals for Cuyahoga County held that "an act of an individual cannot be treated as 'intentional' if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason."

4

{¶ 9} In response to the specific question certified to us by the Twelfth Appellate District, we find that within the context of an intentional-injury-exclusion clause in an insurance contract, insanity should be defined pursuant to *Turner*—not R.C. 2901.01(N).

{¶ 10} In the case at bar, the trial court, citing *Turner*, found that Kollstedt lacked the mental capacity at the time of the shooting to commit an intentional act. Therefore, the trial court determined that the exclusion in Kollstedt's homeowner's policy for expected or intended injuries did not apply. The evidence supporting the trial court's determination consisted of, *inter alia*, the deposition testimony of two expert witnesses, Drs. Fisher and Samy. In his deposition, Dr. Fisher testified that Kollstedt suffered from degenerative dementia of the Alzheimer type and senile onset with delirium. Fisher stated that Kollstedt's mental derangement at the time of the shooting would have made it impossible for him "* * * to carry on the sequence of events that would have led from the planful [*sic*] intent to actually executing a deed." According to Fisher, Kollstedt's mental state precluded Kollstedt from planning or premeditating an action in a purposeful manner. Similarly, Dr. Samy concluded that Kollstedt's mental condition at the time of the shooting precluded Kollstedt from making a rational judgment.

{¶ 11} On appeal, the court of appeals determined that the evidence supported the trial court's determination that Kollstedt could not have acted intentionally at the time of the shooting, since Kollstedt suffered from a derangement of intellect that deprived him of the capacity to govern his conduct in accordance with reason. Therefore, the court of appeals, applying *Turner*, affirmed the judgment of the trial court that the intentional injury exclusion did not apply.

{¶ 12} We affirm the judgment of the court of appeals. We hold that a provision in a liability insurance policy which excludes coverage to an insured where the insured expected or intended to cause bodily injury or property damage does not apply under circumstances where the insured was mentally incapable of

committing an intentional act. When disputed, the determination whether an insured lacked the mental capacity to commit an intentional act is a matter to be determined, in the first instance, by a trial court, and such determination is to be made by the trial court on the basis of the evidence. Such a determination will not be disturbed, absent an abuse of discretion. We find no abuse of discretion here.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs in the syllabus and judgment only.

_____