[Cite as *Krewina v. United Specialty Ins. Co.*, 2021-Ohio-4425.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| AUSTIN KREWINA, | : | APPEAL NO. C-210163 |
| | | TRIAL NO. A-1903706 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| UNITED SPECIALTY INSURANCE CO., | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Case Remanded

Date of Judgment Entry on Appeal:  December 17, 2021


*Mezibov Butler* and *Brian J. Butler*, and *Goodson & Company* and *Brett Goodson,* for Plaintiff-Appellant,

*Collins Roche Utley & Garner LLC* and *Richard M. Garner,* for Defendant-Appellee.

**Bock, Judge.**

{¶1} Plaintiff-appellant Austin Krewina appeals the trial court's declaratory judgment, which determined that his claims were not covered by an insurance policy issued by defendant-appellee United Specialty Insurance Company ("USIC"). The question here is whether the acts of a person living with a mental-health condition that renders him incapable of governing his conduct in accordance with reason triggered the policy exclusion for assault or battery, or a liability-limitation endorsement for physical abuse. We hold that those acts do not trigger the exclusion or the endorsement and reverse the judgment of the trial court.

## I.      Facts and Procedure

{¶2} Austin Krewina and Colin Doherty lived at the Brown County Care Center ("BCCC"), a group care facility that provided room and board for adults transitioning from jails and restrictive health facilities to independent living. In September 2014, Doherty attacked Krewina with a razor blade. The details surrounding the attack are unclear, but Krewina survived despite multiple lacerations to his face and neck.

### A.  The Policy

{¶3} In 2014, BCCC contracted with USIC for liability coverage under a commercial general liability policy ("Policy"). The Policy covered BCCC as a "group home" service provider. Under the Policy, USIC agreed to pay "those sums" for which BCCC became liable "because of any negligent act, error or omission with respect to professional services, rendered by or that should have been rendered by [BCCC]" that led to bodily injury. In this appeal, two provisions are at issue.

{¶4} First, the "Assault and Battery Exclusion" ("Exclusion") limited coverage by USIC. At its core, the Policy left BCCC without coverage for any claims of bodily injury arising out of an actual, threatened, or alleged assault or battery:

1. This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

   (a)   any actual, threatened or alleged assault or battery;

   (b)   the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

   * * * *

2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

   (a)   any actual or alleged injury arises out of any combination of an assault or battery-related cause of action and a non-assault or battery-related cause.

   (b)   any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

   (c)   any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

The Exclusion left the words "assault" and "battery" undefined.

{¶5} Second, the policy had a "Physical and Sexual Abuse Amendatory Endorsement" ("Endorsement"). The Endorsement modified the policy and extended coverage to any "bodily injury" caused by "any actual, threatened or alleged physical or sexual abuse or molestation to any person left under [BCCC's] care or supervision as a licensed care provider." While physical-abuse claims were covered under the policy, the Endorsement limited coverage to $25,000 per each instance of physical abuse and a $50,000 total limitation. The Endorsement left "abuse" undefined.

## B. *State v. Doherty*

{¶6} The state indicted Doherty for multiple counts of attempted murder, attempted aggravated murder, and felonious assault in the Brown County Court of Common Pleas. *State v. Doherty*, Brown C.P. No. CRI2014-2191 (Jan. 1, 2015). In 2015, the Brown County court found Doherty not guilty by reason of insanity—that Doherty "did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts." *See* R.C. 2901.01(A)(14) and 2945.391.

{¶7} Weeks later, the Brown County court held an R.C. 2945.40(A) hearing to determine if Doherty had a mental illness that required court supervision and civil commitment. Based on psychiatric and psychological reports, the court found that Doherty lived with "auditory hallucinations that have involved command hallucinations that indicate homicidal threats and aggression toward others." Doherty experienced "delusional beliefs and paranoia, which commonly involve[d] themes that other individuals are attempting to harm him." The trial court found, by clear and convincing evidence, that Doherty had a mental illness that required his involuntary commitment.

4

## C. *Krewina v. BCCC*

{¶8} In 2016, Krewina sued BCCC and Doherty for damages in the Hamilton County Court of Common Pleas. Krewina alleged that Doherty had negligently caused Krewina's physical injuries and that BCCC "negligently, recklessly, and carelessly failed to keep" Krewina free from abuse, physical harm, pain, and mental anguish. BCCC sought defense and indemnification from USIC under the Policy, but USIC refused. Specifically, USIC concluded that "the policy excludes coverage for any cause of action arising out of any actual, threatened, or alleged assault and battery." BCCC filed a third-party complaint against USIC for multiple claims, including breach of contract.

{¶9} While those claims were pending, Krewina and BCCC entered into a "Settlement Agreement, Consent Judgment and Covenant Not To Execute" ("Settlement Agreement"). In turn, the trial court entered a judgment against BCCC in accordance with the Settlement Agreement and awarded Krewina $952,924.36 in damages. *Krewina v. Brown County Care Center, LLC,* Hamilton C.P. No. A-1600368 (Nov. 15, 2016). In the Settlement Agreement, Krewina and BCCC stipulated that when "Doherty inflicted serious bodily injury on Krewina, [he] suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason." BCCC assigned all claims against USIC to Krewina and voluntarily dismissed its third-party claims against USIC.

{¶10} Following that judgment, Krewina sought payment from USIC as the successor-in-interest to BCCC's insurance policy under R.C. 3929.06(A)(1). Krewina filed a supplemental complaint against USIC; USIC answered and counterclaimed. But the trial court lacked jurisdiction to reopen the case, so it severed Krewina's supplemental complaint and reassigned the case.

### D. *Krewina v. USIC*

{¶11} The parties refiled their pleadings and submitted the case to the trial court "for resolution on the pleadings, stipulations, and legal arguments." Krewina requested a declaratory judgment that the Policy covered Krewina's judgment against BCCC and sought indemnification from USIC for $952,924.36, plus interest. Krewina alleged that BCCC had breached its duty to provide Krewina a safe environment "free from abuse, physical harm, pain and mental anguish." Krewina alleged that Doherty had "suffered from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason."

{¶12} In a "Joint Stipulation of Facts," the parties recounted the injuries sustained by Krewina, Doherty's criminal trial, and the preceding civil litigation between Krewina and BCCC. Relevant here, the parties agreed that all facts and evidence contained in the "Joint Stipulation of Facts" were "stipulated and admissible in relation to Krewina's Supplemental Complaint." The Joint Stipulation of Facts attachments included the stipulation that when "Doherty inflicted serious bodily injury on Krewina, [he] suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason."

{¶13} USIC counterclaimed and requested a declaratory judgment that the Exclusion and Endorsement precluded coverage for Krewina's claims, and that USIC had no duty to indemnify those claims. In its trial brief, USIC argued that assault or battery allegations triggered the Exclusion and Endorsement and that Doherty's criminal indictment alleged an assault. USIC argued in favor of a broad interpretation of its Exclusion and Endorsement and, under that broad language, that Krewina's injuries were the result of an alleged assault and alleged physical abuse.

**{¶14}** The trial court entered judgment dismissing Krewina's complaint. The trial court determined that the Exclusion precluded coverage for Krewina's claims and USIC had no duty to indemnify or satisfy the judgment amount stipulated by Krewina and BCCC. The trial court found that "Krewina was injured by an assault and battery inflicted upon him by another resident of BCCC" and explained that "the fact that Doherty was found to lack the requisite mental state for a criminal conviction does not change that his conduct fits that plain and unambiguous language."

**{¶15}** Krewina appeals.

## II.     Law and Analysis

**{¶16}** An insurance policy is a contract and its interpretation is a matter of law that we review de novo. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995).

**{¶17}** A contract is unambiguous when the language "can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. If the policy language is clear, we look no further than the writing itself to determine the intent of the parties. *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325, 162 N.E.3d 927, ¶ 11, 26, *appeal not allowed*, 161 Ohio St.3d 1475, 2021-Ohio-717, 164 N.E.3d 480, citing *Galatis* at ¶ 11.  When the policy terms are "clear and unambiguous, [the] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). The plain and ordinary meaning of the policy language controls our interpretation

"unless manifest absurdity results" or another meaning is clearly apparent from the policy. *Id.*

{¶18} Terms in an insurance policy are not ambiguous merely because the policy fails to define them. *Guman* at 108. An ambiguous provision is one that is susceptible to multiple interpretations and is strictly construed against the insurer and liberally in favor of the insured. *Hunter* at ¶ 11.

## A. **The Assault or Battery Exclusion**

{¶19} Policy exclusions are interpreted to apply only to what is expressly intended to be excluded. *Guman,* 73 Ohio St.3d at 108, 652 N.E.2d 684, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). Because the insurer drafts the policy, the exclusion's language must be precise, clear, and exact to be given effect. *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 550, 757 N.E.2d 329 (2001), quoting *Am. Fin. Corp. v. Fireman's Fund Ins. Co.,* 15 Ohio St.2d 171, 174, 239 N.E.2d 33 (1968). To defeat coverage under a policy exclusion, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen* at 549.

{¶20} Similar assault-and-battery exclusions are generally considered unambiguous and this court has applied such exclusions to injuries caused by a third-party assault. *See Carter v. Adams*, 173 Ohio App.3d 195, 2007-Ohio-4322, 877 N.E.2d 1015, ¶ 33 (1st Dist.).

{¶21} The central issue here is whether the acts of a third-party who "suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason" can trigger the Exclusion.

8

### 1. **"Actual" Assault or Battery**

{¶22}   The Exclusion eliminates coverage for a "bodily injury * * * arising out of or resulting from * * * any actual, threatened or alleged assault or battery" and any bodily injury arising from the combination of an assault or battery and another cause or chain of causes. Assault and battery are both undefined in the policy. In their briefs, the parties agree that the plain and ordinary meaning of "assault" includes both the common law tort definition and statutory criminal definition.[1] "The terms 'assault' and 'battery' carry specific legal connotation[s] pertaining to" unlawful conduct. *Hawk v. Stocklin*, 3d Dist. Allen No. 1–13–56, 2014-Ohio-2335, ¶ 29.

### a.   Assault and Battery Definitions

{¶23}   Ohio tort law defines a battery as acting with intent to cause a harmful or offensive contact and a harmful contact results. *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988), citing Restatement of the Law 2d, Torts, Section 13 (1965). Civil assault consists of a "willful threat or attempt to harm or touch another offensively" and includes the "essential element * * * that the actor knew with substantial certainty that his act would bring about harmful or offensive contact." *Schweller v. Schweller*, 1st Dist. Hamilton No. C-970183, 1997 WL 793106, *4 (Dec. 26, 1997), quoting *Love* at 99.

{¶24}   Ohio's criminal statute combines the crimes of assault and battery into one offense, which prohibits "knowingly * * * [or] recklessly caus[ing] physical harm to another." R.C. 2903.13(A) and (B). A person acts knowingly when "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A person is reckless when that person is

---

[1] At oral argument, USIC contended that "assault" should be read in a nontechnical sense. But as that argument is not contained in its brief, it is waived.

acting "with heedless indifference to the consequences" or "disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶25} At their core, tort claims for assault and battery require a perpetrator to act with intent. And criminal assault requires that the defendant act knowingly or recklessly. Consequently, for the Exclusion to apply, Doherty must have acted with 1.) intent to harm Krewina; 2.) knowledge that his actions would cause a result or would likely be of a certain nature; or 3.) heedless indifference to the consequences and disregarding a substantial and unjustifiable risk.

### b. Relevant Caselaw

{¶26} USIC cites a number of cases involving denial of coverage for intentional acts. There is little doubt that, but for Doherty's mental condition, the Exclusion would preclude coverage. But Supreme Court of Ohio precedent compels us to explore whether the Exclusion is triggered based on Doherty's "derangement of his intellect" and deprivation "of his capacity to govern his conduct in accordance with reason."

{¶27} More than 25 years ago, the Supreme Court of Ohio considered whether an insurance policy exclusion that limits coverage for a bodily injury intended or expected by the insured "appl[ied] under circumstances where the insured was mentally incapable of committing an intentional act." *Nationwide Ins. Co. v. Estate of Kollstedt,* 71 Ohio St.3d 624, 627, 646 N.E.2d 816 (1995). In *Kollstedt,* the court addressed whether an intended-or-expected-injury exclusion applied to injuries caused by an insured who, according to mental-health professionals, lived with "degenerative dementia of the Alzheimer type and senile onset with delirium." *Id.* In the context of that exclusion, the court explained that an

10

individual's acts are not " 'intentional' if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason." *Id.* at 626, quoting *Nationwide Mut. Fire Ins. Co. v. Turner*, 29 Ohio App.3d 73, 76, 503 N.E.2d 212 (8th Dist.1986). As the insured could not form the requisite intent, the intentional-act exclusion did not apply. *Kollstedt* at 627.

{¶**28**} That approach is consistent with the principle that affirmative defenses render otherwise unlawful conduct lawful. *See State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, 151 N.E.3d 420, ¶ 21. In the context of an insured's self-defense, "use of force was not wrongful under the law, did not constitute a 'battery,' and [the] injury did not arise from 'an actual battery.' " *Hawk,* 3d Dist. Allen No. 1-13-56, 2014-Ohio-2335, at ¶ 29. In *Hawk,* the Third District reversed the trial court's grant of summary judgment in favor of an insurer who denied coverage based on an exclusion for a bodily injury "arising out of an actual or threatened assault or battery." *Id.* at ¶ 18, 32.[2] In that case, a bar employee had punched a patron, allegedly in self-defense. *Id.* at ¶ 5. The parties agreed that the insured's employee had intentionally hit the victim. *Id.* at ¶ 18. The Third District rejected the insurer's argument that, regardless of the circumstances, the employee's use of force constituted a battery. *Id.* at ¶ 29-30. The court emphasized that "the critical distinction between an 'intentional act'—a mere factual description of one's conduct, and an 'assault' and/or 'battery'—terms which denote a conclusion of law pertaining to conduct determined to be wrongful, i.e., an "intentional tort.' " *Id.* at ¶ 25. The Third District refused to "erroneously blur [that] distinction." *Id.* When the policy

---

[2] Though the original policy had stated that the exclusion did not apply to use of reasonable force to protect persons or property, an endorsement in place when the bar owner purchased the policy did not include that language.

left the terms "assault" and "battery" undefined, the court looked to the plain and ordinary meaning of those terms and held that the terms "carry a specific legal connotation pertaining to conduct constituting intentional torts." *Id.* at ¶ 29.

c. <u>Doherty's acts did not constitute "actual assault"</u>

**{¶29}** USIC contends that "under the undisputed facts, Krewina cannot argue that no actual assault or battery occurred because of Doherty's" mental-health condition. Appellee Brief, 12-13. We disagree.

**{¶30}** The parties do not dispute that Doherty inflicted serious bodily injury on Krewina. The issue here is whether Doherty's act fit either the civil or criminal definition of assault. In other words, did Doherty 1.) intend to cause harmful or offensive contact, 2.) know his actions would cause Krewina's injuries, or 3.) act with heedless indifference to the consequences of his actions and disregard a substantial risk that Krewina would suffer injuries?

**{¶31}** According to the facts incorporated into the joint stipulation, Doherty "suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason." Under *Kollstedt*, one who lacks the capacity to govern his conduct in accordance with reason cannot act intentionally.

**{¶32}** Considering the precedent in *Kollstedt*—a precedent by which we are constrained—when a person's "derangement of intellect" deprives him of "the capacity to govern his conduct in accordance with reason," it follows that he cannot know that his actions would cause such injuries and cannot act with heedless indifference or disregard a substantial risk.

**{¶33}** USIC argues that *Kollstedt*'s reasoning applies narrowly to policy exclusions that preclude coverage for bodily injuries that are "expected or intended." Once again, we disagree. USIC is correct that its Exclusion language is broader than

and distinct from the language of *Kollstedt.* But the language does not clearly and explicitly exclude coverage in this case.

{¶**34**} While the trial court did not determine or address Doherty's mental capacity, the record below incorporated—without objection—the stipulated fact that Doherty "suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason." For that reason, we find that Doherty did not commit an actual assault or an actual battery. *See Hawk,* 3d Dist. Allen No. 1–13–56, 2014-Ohio-2335, at ¶ 29.

{¶**35**} USIC next argues that the Exclusion applied to Krewina's claims because "an insane or otherwise mentally disordered person is civilly liable for injuries resulting from their intentional torts." *Clark v. Estate of Halloran,* 8th Dist. Cuyahoga No. 64576, 1994 WL 11321, *1 (Jan. 13, 1994). But *Clark* recognized a key distinction between tort law and insurance law in its analysis: "[t]hey involve two fundamentally different areas of law, each founded on separate and distinct legal theories and principles." *Id.* at *2, citing *Rajspic v. Nationwide Mut. Ins. Co.*, 110 Idaho 269, 718 P.2d 1167, 1170 (1986).

{¶**36**} Following a not-guilty-by-reason-of-insanity verdict, a person could, under some circumstances, commit an assault or a battery. But the Exclusion here "does not apply under circumstances [if Doherty] was mentally incapable of committing an intentional act." *Kollstedt,* 71 Ohio St.3d at 627, 646 N.E.2d 816. Because Doherty "suffered from a derangement of his intellect which deprived him of his capacity to govern his conduct in accordance with reason," Doherty did not act intentionally, knowingly, or recklessly. Therefore, Krewina's bodily injury did not arise out of an actual assault or battery.

### 2. **"Alleged" Assault or Battery**

**{¶37}** Pivoting from an actual assault or battery, USIC claims that the assault allegation in Doherty's criminal indictment triggered the Exclusion. We find this argument unpersuasive. First, we note that when we consider an insured's duty to indemnify, what matters are the conclusive facts and resulting judgment. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 33. According to the Settlement Agreement, "Krewina suffered from a permanent and physical deformity, specifically, serious lacerations to his face and neck." As discussed, the Settlement Agreement also stated that "Doherty suffered from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason." With these facts in mind, we find that the conclusive facts and resulting judgment fail to allege an assault or battery.

**{¶38}** "Alleged" means "asserted to be true as described" or "accused but not yet tried." *Black's Law Dictionary* 82 (8th Ed.2004). Similarly, "allegation" means "[a] declaration that something is true; esp., a statement, not yet proved, that someone has done something wrong or illegal" and "[s]omething declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement that of a factual matter as being true or provable, without its having yet be proved." *Black's Law Dictionary* 81 (8th Ed.2004). In general usage dictionaries, alleged means "[r]epresented as existing or as being as described but not so proved." *Webster's New College Dictionary* 28 (1995). Thus, assuming Doherty's indictment were an appropriate foundation for analyzing USIC's duty to indemnify, the allegations stated in the indictment could have triggered the Exclusion if the assault charges were not yet tried.

14

**{¶39}** But the Brown County Court of Common Pleas adjudicated the allegations of assault in the criminal indictment one year before USIC refused to defend or indemnify BCCC—a fact that we cannot ignore. When an allegation is disproven—as it was here—an insurer cannot escape coverage simply because someone made an allegation at one point in the process. Doherty's criminal allegations are not perpetual. Rather, the final judgment of an Ohio court extinguished the allegations. In the end, USIC cannot rely on a mere allegation to escape coverage while ignoring the adjudication of that allegation.

**{¶40}** Finding no alleged assault or battery, and no actual assault or battery, we hold Part 1 of the Exclusion does not apply. In turn, coverage is not defeated by Part 2 of the Exclusion. As discussed, Doherty's acts do not fit a legal definition of assault or battery. Therefore, Part 2 does not explicitly preclude coverage. Accordingly, Krewina's injuries stemming from BCCC's negligence are entitled to coverage under USIC's policy.

## B. **The Abuse Endorsement**

**{¶41}** Turning to the Endorsement, USIC contends that Krewina's injuries are subject to the Endorsement's liability sublimits. The Endorsement contains a $25,000 sublimit for each claim involving a " 'bodily injury' arising out of * * * [a]ny actual, threatened, or alleged physical or sexual abuse or molestation to any person left under [BCCC's] care or supervision as a licensed care provider." Abuse is left undefined in the Policy, so we must look to the plain and ordinary meaning of the word, which can be found in a criminal statute.

**{¶42}** R.C. 2903.34(A)(1) criminalizes abuse and neglect of care-facility patients. R.C. 2903.34(A)(1). BCCC qualified as a care facility and, relevant here, the

15

statute defined abuse as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact." R.C. 2903.33(B).

{¶43} As such, Doherty's acts constituted physical abuse if he knowingly or recklessly caused physical harm to Krewina. And as discussed, our inquiry is confined to the conclusive facts and resulting judgment. *Pilkington,* 122 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, at ¶ 33.

{¶44} USIC contends that allegations of physical abuse triggered the Endorsement. USIC first argues that the Settlement contains allegations of physical abuse. In the Settlement, Krewina and BCCC stipulated that Krewina suffered injuries stemming from BCCC's failure to "keep residents free from abuse, physical harm, pain, and mental anguish." Similarly, the supplemental complaint alleged that "BCCC has a duty to provide its residents a safe living environment and to keep residents free from abuse, physical harm, pain, and mental anguish."

{¶45} Abuse, by R.C. 2903.34(A)(1)'s definition (and in the ordinary sense of the term), requires a person to act knowingly, intentionally, or recklessly. But, as we have explained, the facts stipulated that Doherty lacked the capacity to govern his conduct in accordance with reason. Also as explained, Doherty's lack of capacity rendered him incapable of committing an act—including abuse—intentionally, knowingly, or recklessly.

{¶46} Accordingly, Doherty's conduct did not constitute an "alleged, threatened or alleged" physical abuse of Krewina.

### III.   Conclusion

{¶47} Doherty lacked the capacity to act intentionally, knowingly, or recklessly. As such, Doherty's attack on Krewina triggered neither the Exclusion nor the Endorsement and we sustain his assignment of error. The trial court's judgment

16

is reversed. We remand this case to the trial court to enter judgment against USIC consistent with this opinion.


Judgment reversed and case remanded.


**ZAYAS, P.J.,** concurs.
**MYERS, J.,** concurs separately.

**MYERS, J.,** concurring separately.

{¶48}  I agree with the majority that based on *Nationwide Ins. Co. v. Estate of Kollstedt*, 71 Ohio St.3d 624, 646 N.E.2d 816 (1995), we must reverse and remand this case to the trial court.  I write separately because I urge the Supreme Court of Ohio to review this case and its holding in *Kollstedt*.

{¶49}  In *Kollstedt*, the court held that an exclusion for intentional injuries did not apply when the insured was mentally incapable of committing an intentional act.  *Id.* at 627.  And, I agree with the majority that the reasoning of *Kollstedt* compels us to conclude that if Doherty was incapable of legally committing an assault, the assault and battery exclusion in our case likewise does not apply.  This result, however, seems to be in contrast to the common understanding of an assault and the plain meaning of the terms.

{¶50}  From the victim Krewina's standpoint, surely he would believe he was the victim of an assault, even if Doherty was found not guilty by reason of insanity. And from a policy holder's perspective, surely they would believe that an attack upon a person with a knife would constitute an assault under the policy, causing it to come under the exclusion.  It does not make sense to me to have the exclusion dependent upon the mental state of the perpetrator as opposed to the conduct trying to be

17

excluded under the policy. In other words, the very same attack would be excluded if the perpetrator was someone other than Doherty who had the mental capacity to commit the crime/tort of assault.

{**¶51**} If not constrained by my interpretation of what *Kollstedt* requires, I would find that the exclusion applied.

Please note:

The court has recorded its entry on the date of the release of this opinion