CARTER et al.,

v.

ADAMS et al.;

Wilbar Enterprises, L.L.C., d.b.a. Queen Ann Bar & Grill, Appellant,

v.

Scottsdale Surplus Lines Insurance Company, Appellee.

[Cite as *Carter v. Adams*, 173 Ohio App.3d 195, 2007-Ohio-4322.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060859.

Decided Aug. 24, 2007.

Weisser & Wolf and Mark B. Weisser, for appellant.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., Robert H. Stoffers, and David K. Frank, for appellee.

MARK P. PAINTER, Presiding Judge.

{¶ 1} While he stood inside the Queen Ann Grill & Bar, Robert Carter was shot several times by another patron. Carter survived and sued. The case turns on whether a shooting is an assault. We hold that it is, and affirm the trial court's entry of summary judgment.

## I. Everybody Sues

{¶ 2} Carter and his family sued the bar's owner, Wilbar Enterprises, L.L.C., and several of the bar's employees. The Carters also sued William Waxler, the president and sole shareholder of Wilbar, and two of Waxler's other business entities, Perfect Printing, Inc., and Wilbar Grille, L.L.C. The shooter, one Jones, was not sued.

{¶ 3} Wilbar's insurer, Scottsdale Surplus Lines Insurance Company, refused to defend against the Carters' action. Wilbar then filed a third-party complaint against Scottsdale, asserting claims of bad faith and breach of contract. Wilbar also sought a declaration that Scottsdale owed it a duty to defend against the allegations in the Carters' complaint.

{¶ 4} Scottsdale counterclaimed against Wilbar, seeking a declaration that no coverage existed under its commercial general-liability policy because of the policy's assault-and-battery exclusion.

{¶ 5} Wilbar and Scottsdale both moved for summary judgment. The trial court granted summary judgment for Scottsdale, holding that Scottsdale had no duty to defend or indemnify Wilbar under the policy's assault-and-battery exclusion.

{¶ 6} In a single assignment of error, Wilbar now argues that the trial court erred in overruling its summary-judgment motion and in granting summary judgment for Scottsdale.

## II. Summary–Judgment Standard

{¶ 7} We review a grant of summary judgment de novo.[1] Summary judgment should be granted only if (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come only to a conclusion adverse to the nonmoving party, when viewing the evidence in favor of the nonmoving party.[2]

## III. Review of an Insurance Policy

{¶ 8} When interpreting an insurance contract, a reviewing court must give effect to the intent of the parties.[3] A court must examine the contract as a

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8.

2. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

3. See *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11.

whole and look to the plain and ordinary meaning of the language in the policy.[4] If the language of the policy is clear, a court must look no further than the policy itself to determine the intent of the parties.[5] Any exclusion within an insurance contract must be interpreted to apply only to what is clearly intended to be excluded.[6]

## IV. Duty to Defend

■ {¶ 9} "An insurer's duty to defend is broader than and distinct from its duty to indemnify."[7] An insurer may bring a declaratory-judgment action to determine its duty to defend or indemnify its insured in an action brought by a third party.[8]

■■ {¶ 10} An insurer's duty to defend may arise solely from the allegations of the underlying complaint.[9] If the complaint states a claim that is potentially or arguably within the policy coverage, an insurer must assume the defense of the action against its insured.[10] But if the conduct alleged in the complaint is indisputably outside the scope of coverage, there is no duty to defend.[11]

## V. The Scottsdale Policy

{¶ 11} In its policy, Scottsdale agreed that it would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However,

---

4. See *Alexander v. Buckeye Pipe Line* Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

5. See *Galatis*, supra.

6. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

7. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 13.

8. See *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, paragraph one of the syllabus.

9. See *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 459 N.E.2d 555.

10. Id.

11. See *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, at ¶ 21, citing *Preferred Risk*, supra.

we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

{¶ 12} The policy included an "assault and/or battery" exclusion, which specifically excluded from coverage any injury arising from the following:

{¶ 13} "1. Assault and/or Battery committed by any insured, any employee of any insured, or any other person;

{¶ 14} "2. The failure to suppress or prevent Assault and/or Battery by any person in 1. above;

{¶ 15} "3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery.

{¶ 16} "4. The negligent:

{¶ 17} "a. Employment;

{¶ 18} "b. Investigation;

{¶ 19} "c. Supervision;

{¶ 20} "d. Reporting to the proper authorities, or failure to so report;  or

{¶ 21} "e. Retention by a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1, 2 or 3 above."

### VI.  A Shooting Is An Assault "And/Or" Battery

{¶ 22} Wilbar concedes that, under the criminal law, assault and battery would encompass the use of a firearm.  But Wilbar argues that Carter's injuries did not arise from an "assault" or "battery" as a layperson would understand those terms.

{¶ 23} To give the reader a better understanding of Wilbar's argument, we quote directly from its brief:  "The plain and ordinary meaning of the term assault and battery to a layperson, however, would encompass a physical attack on another without the use of a firearm.  Thus, under the naturally and commonly accepted use of the term assault and battery, the exclusion should not apply insofar as a common usage of the term assault and battery does not encompass the use of a firearm where one individual shoots another individual at a distance of several feet."

{¶ 24} According to Wilbar's reasoning, if Carter's injuries had resulted from a fistfight, rather than from a close-range multiple shooting, then Carter could be said to have been assaulted or battered—but the assailant's use of a firearm instead of his fists meant that he neither "assaulted" nor "battered" Carter.  To so rule would be to indulge in pure pettifoggery.

{¶ 25} In his deposition testimony, Robert Carter testified that he was at the Queen Ann when a man named Jones, standing about six feet away from him, aimed a black handgun and fired two shots at him without warning or provocation. Carter testified, "Fired two shots. He fired—I remember getting hit on the first shot. The first shot in my heart I remember getting hit and I grabbed my chest. I remember getting hit. After that I just heard gun shots. I just remember falling down over there on the table that's over toward the door." In all, Carter suffered eight bullet wounds. Under any definition of the words, an "assault" and "battery" occurred.

{¶ 26} Because the record demonstrates that Carter's gunshot wounds were the result of an assault and battery, the policy's assault-and-battery exclusion precluded coverage for any claims arising from the injuries.

### VII. The Derivative Claims Are Also Barred

{¶ 27} Wilbar argues that because the allegations in the Carters' complaint had potentially stated a claim within the policy's coverage, Scottsdale was obligated to provide a defense. Specifically, Wilbar points to the Carters' claims that it had negligently (1) failed to warn of the risk of injury; (2) hired, trained, or supervised its security personnel; and (3) provided inadequate security. Wilbar contends that the policy's assault-and-battery exclusion did not apply to exclude coverage for allegations based upon negligent security, failure to warn, or failure to provide reasonable security measures.

{¶ 28} But the plain language of the exclusion precluded coverage for injury arising from an assault or battery ("and/or" should never be used [12]), without regard to who committed the assault or battery, or to whether the insured's service of alcohol contributed to the conduct. The exclusion also barred coverage for injuries sustained as a result of the insured's failure to suppress or prevent an assault or battery by any person.

{¶ 29} Under the clear language of the policy's assault-and-battery exclusion, Scottsdale was not liable for injuries arising from an assault or battery, or from the failure to suppress or prevent an assault or battery. Even though the complaint contained allegations of negligent hiring, failure to warn, and failure to provide adequate security, coverage under the policy was barred because the excluded act of assault and battery was the immediate cause of the injuries that gave rise to the allegations of negligence.

{¶ 30} We addressed a similar issue in *Schneider v. Northland Ins. Co.*[13] In that case, a bar patron's alleged injuries directly arose from an assault and

---

12. *Emps.' Mut. Liab. Ins. Co. v. Tollefsen*, 219 Wis. 434, 263 N.W. 376, 377 (1935).

13. (Sept. 17, 1999), 1st Dist. No. C–980791, 1999 WL 728540.

battery by a bar employee. We held that an assault-and-battery exclusion in an insurance policy exempted an insurer from liability for its insured's alleged negligence.[14]

{¶ 31} Other Ohio courts have recognized that an assault-and-battery exclusion operates to bar coverage for a claim that an insured negligently allowed an assault to occur. For example, in *Sphere Drake Ins. Co. v. Ross*, a bar patron sued the bar for injuries resulting from an assault and battery committed by the bar's security staff.[15] The Ninth Appellate District held that the clear language of an assault-and-battery exclusion within the bar's general-liability insurance policy precluded coverage for the patron's claims.[16] The court reasoned that the patron's claim for negligent hiring and supervision of its employees did not give rise to coverage because the patron's injuries had resulted directly from an assault and battery by the bar's staff.[17]

{¶ 32} Similarly, in *Essex Ins. Co. v. Mirage on the Water, Inc.*, the Eighth Appellate District held that an assault-and-battery exclusion obviated any duty on the part of the insurer to defend against or to cover any damages that arose from an altercation at a nightclub.[18]

{¶ 33} In this case, the plain language of the exclusion precluded coverage for any claims arising from the shooting of Carter and for any derivative claims of negligence. Because the conduct alleged in the complaint was indisputably outside the scope of coverage, Scottsdale had no duty to defend or indemnify.

{¶ 34} Accordingly, we hold that the trial court properly entered judgment in favor of Scottsdale. We overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

SUNDERMANN and CUNNINGHAM, JJ., concur.

---

14. Id.

15. (1992), 80 Ohio App.3d 506, 609 N.E.2d 1284.

16. Id. at 510, 609 N.E.2d 1284.

17. Id.

18. 8th Dist. No. 87507, 2006-Ohio-5023, 2006 WL 2776610; see, also, *Colter v. Spanky's Doll House,* 2nd Dist. No. 21111, 2006-Ohio-408, 2006 WL 235045; *Negron v. Odeon Concert Club, Inc.* (May 7, 1998), 8th Dist. No. 73165, 1998 WL 229498; *Dick v. Stein & Pitcher* (May 16, 1997), 6th Dist. No. L–96–303, 1997 WL 256664; *Vasquez v. Campos* (Oct. 25, 1996), 6th Dist. No. L–96–064; *Century Sur. Co. v. Berrodin* (Sept. 25, 1996), 9th Dist. No. 17784, 1996 WL 539176.