[Cite as *Cincinnati Specialty Underwriters Ins. Co. v. Larschied*, 2014-Ohio-4137.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### ALLEN COUNTY

THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE CO.,

      PLAINTIFF-APPELLEE,                  CASE NO. 1-14-01

      v.

HARRY LARSCHIED, INDIVIDUALLY
AND DBA HARRY'S HIDE A WAY & PATIO,

      DEFENDANT-APPELLANT,
      -and-                        O P I N I O N

ANTHONY LANE, ET AL.

      DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2013 0410

**Judgment Affirmed**

Date of Decision: September 22, 2014

APPEARANCES:

    *Robert B. Fitzgerald* **for Appellant, Harry Larschied, D.B.A., Harry's**
        **Hide A Way & Patio**

    *Michael M. Neltner* **for Appellee, Cincinnati Specialty Underwriters**
        **Insurance Company**

Case No. 1-14-01

**ROGERS, J.**

{¶1} Defendant-Appellant, Harry Larschied, individually and dba Harry's Hide A Way & Patio, appeals the judgment of the Court of Common Pleas of Allen County granting summary judgment to Plaintiff-Appellee, Cincinnati Specialty Underwriters Insurance Co. ("Cincinnati Insurance") in a declaratory judgment action. On appeal, Larschied argues that the court erred in finding that the allegations in the complaint were excluded from coverage under the insurance policy. Larschied also argues that, if the insurance policy does exclude the claim, the trial court erred in failing to find the insurance policy to be illusory. For the reasons that follow, we affirm.

{¶2} On December 27, 2012, Anthony Lane filed a complaint naming Larschied, individually and dba Harry's Hide A Way & Patio, as a co-defendant with Swan Nichols. Lane sought damages from an alleged altercation with Nichols that occurred at Harry's Hide A Way & Patio early in the morning on July 5, 2012. The complaint listed four claims against Nichols: (1) battery; (2) assault; (3) intentional infliction of serious emotional distress; and (4) negligent infliction of serious emotional distress. The complaint also listed two claims against Larschied: (1) violation of policy, practice, or custom; and (2) failure to supervise. (Docket No. 17, Exhibit A, p. 7) ("Complaint").

**{¶3}** At the time of the alleged altercation, Larschied was insured under a Commercial General Liability Policy ("the policy") issued through Cincinnati Insurance. The policy stated that it would

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Docket No. 17, Exhibit C, Commercial General Liability Coverage Form, p. 1). ("Insurance Policy"). Further, the policy defined an insured as:

> 1. If you are designated in the Declarations as:
>
> a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> * * *
>
> 2. Each of the following is also an insured:
>
> a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" * * * but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

(*Id.* at p. 9). Larschied was named as an individual in the declarations. The policy stated that " 'Bodily Injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at p. 13).

{¶4} The policy also contained an exclusion for claims arising from an assault or battery. The exclusion stated that the insurance contract

> does not apply to "bodily injury," "property damage" or "personal and advertising" injury arising out of
>
> (1) An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
>
> (2) The failure of any insured or anyone else for whom the insured is legally responsible to prevent or suppress assault or battery; or
>
> (3) The negligent:
>
>> (a) Employment;
>>
>> (b) Investigation or reporting or failure to report any assault or battery to the proper authorities;
>>
>> (c) Supervision;
>>
>> (d) Training;
>>
>> (e) Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph a. above.

(Docket No. 17, Exhibit C, Exclusion – Assault or Battery, p. 1) ("Assault and Battery Exclusion"). Larschied requested that Cincinnati Insurance defend him against Lane's lawsuit under the insurance contract, and Cincinnati Insurance complied.[1]

---

[1] In its judgment entry, the trial court noted that the claims against Larschied had been dismissed on November 26, 2013, through summary judgment. (Docket No. 22, p. 2). While not in the trial court record, at oral argument Larschied stated that his defense was provided under a reservation of rights. As a result, the declaratory judgment action is not moot, as a justiciable controversy still exists. *Allstate Ins. Co. v. Long*, 11th Dist. Portage Nos. 2001-P-0038, 2001-P-0039, 2003-Ohio-61, ¶ 22.

{¶5} On June 12, 2013, Cincinnati Insurance filed a complaint for declaratory judgment, alleging that it had no duty to defend Larschied against Lane's lawsuit as the allegations in the complaint were excluded under the policy. On October 8, 2013, Cincinnati Insurance moved for summary judgment. In Larschied's response, he argued that the exclusion did not apply to the allegations in the complaint, and that, if it did, the policy is illusory. On January 3, 2014, the trial court granted summary judgment in favor of Cincinnati Insurance, declaring that it had no duty to defend Larschied.

{¶6} It is from this judgment that Larschied filed this timely appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN GRANTING THE PLAINTIFF/APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN IT RULED THAT THE ASSAULT OR BATTERY ENDORSEMENT "OBVIATED ANY DUTY ON THE PART OF THE INSURER TO DEFEND AGAINST OR TO COVER ANY DAMAGES THAT AROSE FROM THE SUBJECT ALTERCATION AT HARRY'S HIDE A WAY." (SEE JUDGMENT ENTRY OF TRIAL COURT FILED JAN. 3, 2014, P. 6)**

### *Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FINDING THAT THE INSURANCE POLICY DOES NOT PROVIDE COVERAGE AND THEREFORE EFFECTIVELY CREATED AN ILLUSORY CONTRACT AS IT FAILS TO PROVIDE ANY BENEFIT TO THE INSURED.**

*Assignment of Error No. I*

**{¶7}** In his first assignment of error, Larschied argues that the trial court erred in granting summary judgment because Cincinnati Insurance has a duty to defend him against Lane's lawsuit. Specifically, Larschied claims that the allegations in the complaint brought the action under the coverage of the policy and are not otherwise excluded. We disagree.

*Standard of Review*

**{¶8}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, *Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against

whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992).

{¶9} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292-293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.* at 293; Civ.R. 56(E).

{¶10} Moreover, "[a]n insurance policy is a contract, and its interpretation is a matter of law for the court." *Allstate Ins. Co. v. Eyster*, 189 Ohio App.3d 640, 2010-Ohio-3673, ¶ 17 (3d Dist.), citing *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. An insurance policy must be examined "as a whole and [with the presumption] that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "The coverage under an insurance policy is determined by

construing the contract 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.' " *Eyster* at ¶ 17, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988).

{¶11} While terms in an insurance contract are to be given their plain and ordinary meaning, any ambiguity is construed against the insurer. *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 15. However, "[a]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Id.* at ¶ 16. "[A] court cannot create ambiguity in a contract where there is none." *Id.*

{¶12} Larschied argues that two claims in the complaint trigger coverage under the policy: the fourth claim, which is for negligent infliction of serious emotional distress, and the fifth claim, which is for a violation of policy, practice or custom. We will discuss the allegations in each of these claims in turn.

*Negligent Infliction of Serious Emotional Distress*

{¶13} Before determining whether any exclusions apply, "[o]ne who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss." *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273 (1999), citing *Inland Rivers Service Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34 (1981). Here,

Larschied argues that Lane's complaint "alleged negligence against an insured under the policy." (Appellant's Br., p. 6).

**{¶14}** The terms of the policy define who is an insured for the purposes of receiving coverage. *Galatis*, 2003-Ohio-5849 at ¶ 35. Here, the policy will only "pay for those sums that the *insured* becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Emphasis added.) (Insurance Policy, p. 1). The policy creates a "duty to defend the *insured* against any 'suit' seeking those damages." (Emphasis added.) (*Id.*) The only insureds under the policy are Larschied, his spouse, and his volunteer workers and employees while they are within the scope of their employment. (*Id.* at p. 9-10).

**{¶15}** In Lane's complaint, the fourth claim, which alleges negligent infliction of serious emotional distress, states that "*Defendant Nichols* conduct was negligent and did cause plaintiff to suffer serious emotional distress which was reasonably foreseeable by *Defendant Nichols* at the time." (Emphasis added.) (Complaint, p. 3). Nichols is not an insured under the terms of the policy, as he is not Larschied, Larschied's spouse, a volunteer worker or an employee. Therefore, even if Nichols becomes legally obligated to pay damages as a result of this claim, he is not an *insured* who is legally obligated to pay damages, as required to trigger coverage under the policy.

{¶16} Assuming, arguendo, that Nichols is an insured under the terms of the policy, this claim in the complaint would still not trigger coverage. "An insurance company owes no obligation to its insured or others injured by the insured unless the insured's conduct falls within the policy coverage." *Talbert v. Continental Cas. Co.*, 157 Ohio App.3d 469, 2004-Ohio-2608, ¶ 8 (2d Dist.). The policy states that there is "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' *to which this insurance does not apply*." (Emphasis added.) (Insurance Policy, p. 1). The term "bodily injury" in the policy "means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at p. 13).

{¶17} This court, when analyzing a policy that "defined 'bodily injury' as 'bodily harm, sickness or disease, including death that results,' " found that "bodily injury does not include emotional or mental distress." *Dieringer v. Sawmiller*, 3d Dist. Auglaize No. 2-12-04, 2012-Ohio-4880, ¶ 3, 15. Even where, as here, the term "bodily injury" is defined using the words "bodily injury," the term is not ambiguous and should not be construed against the insurer in favor of coverage for emotional injuries. *Hawthorne v. Migoni*, 5th Dist. Tuscarawas No. 2003 AP 07 0054, 2004-Ohio-378, ¶ 13. Thus, emotional injuries are not "bodily injury" under the policy. Therefore, while the claim in the complaint is for

negligence, it cannot be overlooked that it is for negligent infliction of *emotional distress*.[2] Emotional distress is not a "bodily injury" to which the policy applies.

{¶18} The grant of coverage is both clear and unambiguous as to who is an insured and what damages trigger coverage. As this claim fails to trigger coverage, it is not necessary to determine whether an exclusion applies. As Nichols is not an insured and the alleged damages are not covered under the policy, Cincinnati Insurance has no duty to defend as a result of this claim.

*Violation of Policy, Practice or Custom*

{¶19} In Lane's complaint, the fifth claim is for a "Violation of Policy, Practice or Custom." (Complaint, p. 3.) Unlike the claim for negligent infliction of emotional distress, it is undisputed that this claim is specifically against an insured, Larschied, and is for damages from a "bodily injury" as it is defined in the policy. Cincinnati Insurance argues that the Assault and Battery Endorsement applies to the claim and excludes coverage. Larschied argues that this claim includes allegations that potentially trigger coverage, because

> [w]hile the legal nature of the allegation * * * is unclear, one thing is certain: this allegation is not one of assault or battery. * * * There is no provision or language within [Cincinnati Insurance's] policy that expressly excludes an allegation of this kind of coverage. Indeed the Assault or Battery Endorsement makes no reference whatsoever to an allegation of violation of policy, practice, or custom.

---

[2] We note that the claim also includes a request for damages for the actual injuries Lane suffered. This does not change the nature of the claim to anything other than that of emotional distress, as "[p]roof of a resulting physical injury is admissible as evidence of the degree of emotional distress suffered." *Paugh v. Hanks*, 6 Ohio St.3d 72 (1983), paragraph two of the syllabus.

-11-

Appellant's Br., p. 7.

**{¶20}** The duty of an insurer to defend an action is broader than the duty to indemnify. *Beaverdam Contracting v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, ¶ 20. "The duty to defend is determined by the scope of the allegations in the complaint." *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 19, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19. "Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413 (10th Dist.1999).

> However, where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. Thus, the "scope of the allegations" may encompass matters well outside the four corners of the pleadings.

*City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984).

**{¶21}** This does not allow a court to "impose a duty to defend based on allegations outside the complaint, where the complaint does not state a claim that arguably triggers coverage." *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc.*, 141 Ohio App.3d 269, 278 (10th Dist.2001).

Case No. 1-14-01

> "[W]here a court reviews a complaint and concludes beyond a doubt that there are [no] arguably covered claims encompassed therein it need not stretch the allegations beyond reason to impose a duty on the insurer. To do so would effectively impose an absolute duty on the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint. Even under the liberal notions of notice pleading it would be inherently unfair to require the insurer to provide a defense where the pleadings failed to notify, even arguably, that the insured is being sued on a claim covered by the policy."

*Id.*, quoting *Leland Electrosystems, Inc. v. Travelers Ins. Co.*, 2d Dist. Montgomery No. 8580, 1984 WL 5371, *2 (July 10, 1984). "If the conduct alleged in the complaint is indisputably outside the scope of coverage, there is no duty to defend." *Carter v. Adams*, 173 Ohio App.3d 195, 2007-Ohio-4322, ¶ 10 (1st Dist.).

{¶22} "[W]here an insurance contract excludes coverage for the claim against the insured, no duty to defend will arise * * * because the allegations in the pleadings fall squarely within an area of activity specifically excluded from coverage." *Beaverdam Contracting* at ¶ 21, citing *Zanco v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 116 (1984). "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). Exclusions are strictly construed against the insurer, and will only be enforced if they unambiguously deny coverage under the policy. *Eyster*, 2010-Ohio-3673 at ¶ 19. Other courts have found assault and battery exclusions to

-13-

be unambiguous and applied them to exclude coverage. *See Carter* at ¶ 33*; Colter v. Spanky's Doll House,* 2d Dist. Montgomery No. 21111, 2006-Ohio-408, ¶ 41*; Sphere Drake Ins. Co. v. Ross*, 80 Ohio App.3d 506, 509 (9th Dist.1992).

**{¶23}** Here, the exclusion states that the policy "does not apply to bodily injury * * * *arising out of"* an assault or battery. (Emphasis added.) (Assault and Battery Exclusion, p. 1). Further, it excludes any bodily injury *arising out of* the failure to prevent or stop an assault or battery, or the negligent supervision, training, or retention of anyone that should have prevented or stopped an assault and battery. Here, Larschied does not claim that the exclusion is ambiguous. Instead, he argues that the exclusion does not apply to the allegations in the complaint.

**{¶24}** For an exclusion that uses the term "arising out of" to apply, there must be a causal relationship between the injury and what is excluded. *See Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, ¶ 41 (applying exclusion for injuries arising out of employment, where injuries occurred during course of employment); *see also Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 25-26 (finding exclusion for injuries arising out of uninsured premises did not apply, where there was no causal relationship between the premises and the injuries). Thus, whether this exclusion applies turns on whether

Case No. 1-14-01

the allegations in claim five have a causal connection to either the assault and battery itself or the failure to prevent the assault and battery.

{¶25} Here, the Lane's complaint alleges:

FIFTH CLAIM
(Violation of Policy, Practice or Custom)

* * *

28. Defendant Larschied, as owner and operator of Harry's, has developed and maintained policies, practices, and customs demonstrating a deliberate indifference to the rights of citizens.

29. Defendant Larschied, as owner and operator of Harry's, has failed to implement policies, practices, and customs to protect the rights of citizens. As a result, the employees working security at Harry's have been inadequately trained in the proper duty of care owed to patrons.

30. Such policies, practices, and customs have caused plaintiff to suffer a loss of his right to be free from assault and battery committed against him and resultant physical injury by defendant Nichols.

(Complaint, p. 4).

{¶26} While the legal nature of what constitutes a violation of policy, practice or custom may be unclear, an obtuse title of a claim does not prevent our ability to determine whether the allegations trigger an exclusion under the policy. The allegations specifically state that the injuries are a result of Larschied's failure to adequately train his security, which resulted in their failure to prevent the underlying assault and battery. Thus, the injuries alleged in the claim have a

-15-

causal connection both to the assault and battery itself and to the alleged failure of Larschied to prevent the assault and battery. As this claim "arises out of" the assault and battery and a failure to prevent the assault and battery, it does not, even arguably, trigger coverage under the policy. It is specifically excluded.

{¶27} Further, assuming arguendo that the complaint includes a claim of a concurrent cause of injury that is not specifically excluded, Cincinnati Insurance would still have no duty to defend. Where there is a concurrent cause to an injury it "does not change the fact that [the] injury was the result of an assault and battery, the very thing the policy excludes from coverage." *Sphere Drake,* 80 Ohio App.3d at 510. When analyzing similar assault and battery exclusions, other courts have reached a similar conclusion under comparable circumstances. *See Williams v. United States Liab. Ins. Group,* 5th Dist. Stark No. 2011 CA 00252, 2012-Ohio-1288, ¶ 15; *see also Carter*, 2007-Ohio-4322 at ¶ 29.

{¶28} In *Williams*, a bar patron tried to leave the premises when she witnessed the beginnings of a fight. *Id.* at ¶ 2. However, she was unable to leave through the nearest exit, as it was blocked by the equipment of the disc jockey. *Id.* When she attempted to leave through another exit, she inadvertently became a part of the melee she had been trying to avoid. *Id.* After she had obtained a consent judgment in a lawsuit against the bar, she attempted to recover from the bar owner's insurance policy through a declaratory judgment action. *Id.* at ¶ 4-5. The

trial court granted summary judgment in favor of the insurance company. *Id.* at ¶ 6. On appeal, the patron argued that the policy, which contained a similar exclusion, did not exclude a claim for damages arising out of the negligent blocking of an exit. *Id.* at ¶ 12-13. The appellate court disagreed, finding that

> reasonable minds could only determine that despite [the patron's] claims of negligence against [the bar], the injuries claimed by [the patron] were "based on" the chain of events stemming from a physical altercation between other persons in the pub, as well as alleged omissions by [the bar's] employees in connection with the suppression of an assault or battery on the premises, thus falling under the * * * policy exclusion at issue.

*Id.* at ¶ 15. As a result, the insurance company had no obligation to indemnify the insured under the policy. *Id.*

{¶29} In *Carter*, a bar patron was shot and sued the owner. *Carter* at ¶ 1-2. The insurance company refused to defend the action, and the bar owner filed a declaratory judgment action. *Id.* at ¶ 3. The owner alleged that an assault and battery exclusion similar to the one in the case sub judice "did not apply to exclude coverage for allegations based upon negligent security, failure to warn, or failure to provide reasonable security measures. *Id.* at ¶ 27. The appellate court disagreed, finding that "[e]ven though the complaint contained allegations of negligent hiring, failure to warn, and failure to provide adequate security, coverage under the policy was barred because the excluded act of assault and battery was the immediate cause of the injuries that gave rise to the allegations of negligence."

*Id.* at ¶ 29. As coverage was precluded under the policy for the shooting, the insurer had not duty to defend. *Id.* at ¶ 33.

**{¶30}** Similarly, here the injuries claimed in Lane's complaint all arise out of the assault and battery. Therefore, any concurrent cause of the damage that arose from that assault and battery, whether it be for negligent infliction of emotional distress, violation of policy, practice or custom, or any other cause, is specifically excluded under the policy. As the only allegations in the complaint are for injuries arising out of an assault and battery, they are all excluded under the terms of the policy. As a result, we find that the complaint does not contain any allegations which trigger coverage or arguably trigger coverage. Without any possible trigger of coverage in any of the allegations in the complaint, Cincinnati Insurance had no duty to defend Larschied under the circumstances of this case.

**{¶31}** Accordingly, we overrule Larschied's first assignment of error.

*Assignment of Error No. II*

**{¶32}** In his second assignment of error, Larschied argues that if the exclusion bars recovery under the circumstances of this case, the contract is illusory. We disagree.

**{¶33}** "An insurance provision is illusory when it appears to grant a benefit to the insured, although in reality it does not." *Beaverdam Contracting,* 2008-Ohio-4953 at ¶ 49. However, where the insurance contract contains some

coverage for the insured, it is not illusory. *See Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 24. So long as an exclusion does not eliminate all coverage under a policy, it will not render the policy illusory. *Compare World Harvest Church v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 13AP-290, 2013-Ohio-5707, ¶ 53 (finding that insurance contract was not illusory as some insurance coverage under policy still existed beyond the exclusion for abuse and molestation) *with Coleman v. Progressive Preferred Ins. Co.,* 1st Dist. Hamilton No. C-070779, 2008-Ohio-3568, ¶ 13 (finding that exclusion eliminating all coverage made the policy illusory).

{¶34} Here, the exclusion is limited to claims that arise out of an assault and battery. Damages for bodily injury or property damage that are not caused by an assault and battery are still covered, so long as an insured is legally obligated to pay those damages. As argued by Cincinnati Insurance in its brief, "if a patron were to slip and fall at the premises and sue Harry's, [Cincinnati Insurance] would provide a defense to Harry's for its negligence." (Appellee's Br., p. 13). We agree that, under those circumstances, insurance coverage would be triggered under the policy.[3] As a result, we cannot say that the policy provided no coverage

---

[3] We note that Cincinnati Insurance provided other examples of how the duty to defend would attach under the policy, including an allegation of getting sick from eating the food. However, determining whether getting sick from eating the food would trigger coverage involves making determinations as to how exclusions for communicable, contagious and infectious disease as well as for microorganisms, biological organisms, bioaerosols and organic contaminants, interact with an exclusion for fungi and bacteria that exempts from the exclusion bodily injury from fungi and bacteria found on food. As the negligence claim

-19-

to Larschied, or that the exclusion eliminated all coverage. Therefore the policy is not illusory.

{¶35} Accordingly, we overrule Larschied's second assignment of error.

{¶36} Having found no error prejudicial to the Larschied, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILIAMOWSKI, P.J. and SHAW, J. concurs.**

**/jlr**

---

does not appear to be affected by exclusions in the policy, it is at least one situation where the duty to defend would attach from the outset without further inquiry.